UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ELAINA MECKLENBURG,

                         Plaintiff,          Case # 18-CV-55-FPG

v.                                                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

## INTRODUCTION

Plaintiff Elaina Mecklenburg brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 19. For the reasons that follow, the Commissioner's motion is GRANTED, Mecklenburg's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

Mecklenburg filed for DIB in March 2014 and for SSI in April 2014. Tr.[1] 73, 83. She alleged disability since March 2013 due to back injury, knee injury, brain damage, and vertigo. Tr. 73-74, 78-79. Administrative Law Judge Christine A. Cooke (the "ALJ") held hearings in June 2016 and August 2016 on the applications, at which Mecklenburg and two vocational experts

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 17.

("VE") testified. Tr. 27, 51. On September 7, 2016, the ALJ issued a decision finding that Mecklenburg was not disabled. Tr. 10-21. On November 17, 2017, the Appeals Council denied Mecklenburg's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ analyzed Mecklenburg's claim for benefits under the process described above. At step one, the ALJ found that Mecklenburg had not engaged in substantial gainful activity since the alleged onset date. Tr. 13. At step two, the ALJ found that Mecklenburg had severe impairments of degenerative disc disease, history of psoriasis, history of alcohol abuse, cognitive dysfunction, and pelvic fracture. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. *Id.*

Next, the ALJ determined that Mecklenburg retains the RFC to perform light work[2] with additional limitations. Tr. 14. As is relevant here, the ALJ found that Mecklenburg can sit for 6 hours and stand and walk in combination for 4 hours during a normal workday; can never be exposed to vibration or hazards; and must be able to shift positions without leaving her duty station on an hourly basis. Tr. 14-15.

At step four, the ALJ indicated that Mecklenburg has no past relevant work. Tr. 19. At step five, the ALJ found that Mecklenburg can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 19-21. Accordingly, the ALJ concluded that Mecklenburg was not disabled. Tr. 21.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

## II. Analysis

Mecklenburg argues that the ALJ erroneously evaluated the evidence and medical opinions related to her severe gait dysfunction and balance issues. ECF No. 11-1 at 11-13. After reviewing the record and the parties' briefing, the Court disagrees.

### a. Facts

In early April 2013, Mecklenburg met with her treating physician, Juliane Maciejewski, M.D., complaining of balance issues. Tr. 491. She noted that if she stopped "looking where she [was] going, she [felt] like she [was] going to fall." *Id.* To cope with this, Mecklenburg brought someone with her everywhere she went. *Id.* She stated that she had had these symptoms for "more than a year" and was "frightened by this." *Id.* Dr. Maciejewski noted that Mecklenburg had ataxia—*i.e.*, impaired muscle coordination and balance—and an intention tremor. Tr. 493. She referred Mecklenburg to a neurology specialist and ordered an MRI. *Id.* The MRI revealed a "very subtle" signal associated with Wernicke's encephalopathy, a neurological condition associated with chronic alcohol abuse and characterized by, among other things, gait and balance dysfunction. Tr. 519; *see Estrada v. Barnhart*, No. SA01CA0679OG, 2002 WL 31422431, at *3 n.28 (W.D. Tex. Aug. 13, 2002).

On May 2, 2013, Mecklenburg met with Xiuli Li, M.D., for a neurologic consultation. Mecklenburg reported that her balance issues had "developed over the last couple of years." Tr. 278. When she walked, "she [had] to put her hands and arms at a stretched position and she [had] to use a wide based gait" to prevent falls. *Id.* Standing up or moving increased balance difficulty. *Id.* On examination, Dr. Li found that Mecklenburg walked with a wide based gait with her arms outstretched and could not walk with one eye closed. Tr. 279. Dr. Li concluded that Mecklenburg had a gait disturbance with "wide based gait." Tr. 280. Dr. Li suggested that those symptoms may

5

be the irreversible result of Mecklenburg's chronic alcohol abuse. *Id.* Dr. Li recommended physical therapy, vitamins, and the use of a cane for "gait protection." Tr. 280.

On May 8, 2013, Mecklenburg followed up with Dr. Maciejewski. Dr. Maciejewski concluded that Mecklenburg's chronic alcohol abuse had caused permanent damage, resulting in poor balance and frequent falls. Tr. 499. She opined that "[t]his condition will not get better and likely will deteriorate" and that Mecklenburg "is for all purposes totally and permanently disabled." *Id.* Dr. Maciejewski recommended that Mecklenburg use a cane to walk. *Id.*

In August 2013, Mecklenburg met with Rebecca Beardsley, a nurse practitioner. Mecklenburg reported that she had received a cane and had been undergoing physical therapy until her recent breast infection. Tr. 440. She stated that physical therapy "helped her walk with a cane." *Id.* Beardsley provided Mecklenburg with another neurology referral to assess her disability status. Tr. 442.

Mecklenburg had subsequent appointments with Dr. Maciejewski where balance issues were noted. In October 2013, Dr. Maciejewski indicated that Mecklenburg had a "wide based gait with arms held out at sides," could not tandem walk, and had an intention tremor. Tr. 469. Dr. Maciejewski referred Mecklenburg to physical therapy for evaluation and treatment. *Id.* At a March 2014 appointment, Mecklenburg did not complain about gait dysfunction or balance issues, and Dr. Maciejewski did not describe any observations beyond noting that Mecklenburg had been diagnosed with a gait abnormality and prescribed a cane. Tr. 604. In January 2015, Mecklenburg reported to Dr. Maciejewski that she had no change in her tremors and falling. She stated that she did not "travel further than [the] corner store by herself" and had "difficulty looking up." Tr. 632. She still used a cane. *Id.*

At the August 2016 hearing, Mecklenburg testified that her balance issues significantly curtail her ability to walk and engage in daily activities. She stated that she gets dizzy and loses balance if she does not focus on the ground as she walks, making it difficult to cross streets or ride the bus. Tr. 35. To walk, even around her home, she either needs to use a cane or hold onto something or someone. Tr. 36, 40. Mecklenburg estimated that she could stand unassisted—without a cane or something to lean on—for about sixty seconds. Tr. 42. With assistance, she can walk for at most an hour, though it exhausts her for the remainder of the day. Tr. 43. Mecklenburg also testified that she falls three to four times per year. Tr. 36.

The ALJ concluded that Mecklenburg's balance and gait problems were not as persistent or severe as she alleged. Tr. 15-16. The ALJ noted that the brain MRI showed only a "very subtle" finding associated with Wernicke's encephalopathy. Tr. 15. The ALJ rejected Dr. Li's opinion that Mecklenburg needed a cane because Dr. Li met with her once and therefore did not personally observe persistent gait or balance problems. Tr. 16, 18. Furthermore, Dr. Li's opinion was inconsistent with the observations of other physicians who, between June 2013 and March 2016, noted that Mecklenburg displayed normal gait and coordination at appointments. *See, e.g.*, Tr. 299, 317, 325-26, 761. Finally, the ALJ noted that "the need for a cane did not align with" Mecklenburg's sparing use of pain medication and her reported daily activities like shopping. Tr. 18; *see also* Tr. 632 (reporting, in January 2015, that she used pain medication sparingly); Tr. 494 (reporting, in March 2014, that she has back pain after "she has a full day out and about, shopping etc").

The ALJ also rejected Dr. Maciejewski's opinion that Mecklenburg was "totally and permanently disabled" and would need a cane to walk. Tr. 18. As with Dr. Li, the ALJ noted that other providers observed that Mecklenburg had normal gait and coordination from mid-2013 to

7

2016. *Id.* The ALJ also found that Dr. Maciejewski's examinations "beyond the alleged onset date do not include associated objective findings to support the degree of limitation conveyed." *Id.* In addition, the ALJ stated that the opinion about Mecklenburg's "disability status concerns an administrative finding reserved to the Commissioner." *Id.* She therefore gave Dr. Maciejewski's opinion little weight. *Id.*

More generally, the ALJ reasoned, "Although one treating source considered [Mecklenburg] disabled and others noted a need for an assistive device, these opinions were not supported by [Mecklenburg's] apparent recovery from her [December 2015] pelvic fracture, clinical presentation throughout the period at issue, or denial of pain symptoms prior to leaving inpatient rehabilitation against medical advice [after her pelvic fracture]." Tr. 19.

### b. Analysis

The Court is not persuaded that the ALJ erred on any of the grounds that Mecklenburg raises.

First, Mecklenburg asserts that the ALJ "gave [too] much credence" to certain physicians who observed that Mecklenburg had normal coordination and gait at appointments. ECF No. 11-1 at 11. This is because those physicians were treating Mecklenburg for other issues and therefore did not need to be concerned about her "gait or back related health issues." *Id.*

The Court disagrees. It would be one thing if these providers had simply omitted any mention of Mecklenburg's gait and coordination. In such a scenario, it may have been less reasonable for the ALJ to conclude that Mecklenburg had no balance or gait issues based on the providers' notes, as those providers were treating her for other conditions and would not have necessarily examined her gait and coordination. By contrast, in this case several providers from 2013 to 2016 affirmatively noted that Mecklenburg had normal gait and coordination. This

8

uniform observation—over several years and by different providers—is clearly relevant to assessing Dr. Maciejewski's and Dr. Li's opinions. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (stating that one relevant factor in weighing a medical opinion is its consistency "with the record as a whole"). Even if these other providers did not undertake complete gait or coordination examinations, their notes remain relevant because they conflict with Mecklenburg's testimony that she is essentially unable to walk normally without assistance. In turn, those notes undermine Dr. Maciejewski's and Dr. Li's opinions, which are based on that alleged level of gait and balance dysfunction. *See* Tr. 278, 499. Therefore, the ALJ's reliance on the observations of other providers was not impermissible.

Second, Mecklenburg argues that, in violation of the treating physician rule, the ALJ did not provide good reasons for affording Dr. Maciejewski's opinion little weight. Specifically, she claims that the ALJ incorrectly stated that (1) only "one provider documented gait and balance problems" and (2) Dr. Maciejewski's examinations did not include objective findings to support the conclusion of total disability.[3] ECF No. 11-1 at 12-13.

Under the treating physician rule, the ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion."

---

[3] Mecklenburg also asserts that the ALJ mischaracterized the evidence when she stated that Dr. Li "did not ascertain the persistence of gait and balance problems from personal observation." Tr. 18. Mecklenburg asserts that, to the contrary, "it is clear that Dr. Li . . . personally ascertain[ed] the problems with [her] gait [and] found that the problems could not be reversed." ECF No. 11-1 at 12. But the Court reads the ALJ's decision to mean that Dr. Li only met with Mecklenburg once and so did not have a longitudinal picture of her condition based on personal observation. That is accurate.

9

*Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). Remand is appropriate if the ALJ does not provide good reasons for rejecting a treating physician's opinion. *Newbury v. Astrue*, 321 F. App'x 16, 17 (2d Cir. 2009) (summary order).

In this case, the ALJ provided good reasons for not giving controlling weight to Dr. Maciejewski's opinion. As already discussed, the ALJ reasonably considered that the claimed severity and persistence of the gait and balance issues were inconsistent with the observations of other providers. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Moreover, while the ALJ's statement that "[o]nly one provider documented gait and balance problems" may be inaccurate insofar as both Dr. Li and Dr. Maciejewski documented such problems, it is clear that the ALJ recognized and considered both opinions despite that isolated misstatement. *See* Tr. 16-18; *see also Scarpino v. Colvin*, No. 15-CV-6231, 2016 WL 5372493, at *15 (W.D.N.Y. Sept. 26, 2016) (ALJ's misstatement of fact did not compel remand where it was harmless); *Cote v. Berryhill*, No. 17-CV-1843, 2018 WL 4092068, at *19 (D. Conn. Aug. 28, 2018) (same).

Similarly, the ALJ reasonably relied on the absence of corresponding clinical or examination findings to discount Dr. Maciejewski's opinion. *See Gorny v. Comm'r of Social Security*, No. 18-CV-06, 2018 WL 5489573, at *3 n.4 (W.D.N.Y. Oct. 29, 2018) (noting that an ALJ is "entitled to discount a treating physician's opinion that he finds unsupported by the doctor's treatment notes" and citing applicable regulations). As Mecklenburg acknowledges, Dr. Maciejewski only examined Mecklenburg's gait and coordination on two occasions: in April 2013, when she noted that Mecklenburg had ataxia and an intention tremor, and in October 2013, when she observed that Mecklenburg had a wide based gait, could not tandem walk, and had an intention tremor. *See* Tr. 469, 493. Although Mecklenburg continued to visit with Dr. Maciejewski over the subsequent years, Dr. Maciejewski did not conduct any further gait examinations or note any

clinical findings to suggest that Mecklenburg continued to have persistent, severe balance problems beyond that short timeframe in mid-2013.

The ALJ also stated that she discounted Dr. Maciejewski's opinion because it conflicted with evidence of Mecklenburg's "apparent recovery from her pelvic fracture" and her "denial of pain symptoms prior to leaving inpatient rehabilitation against medical advice." Tr. 19. Mecklenburg advances no argument challenging the ALJ's reasoning in these respects.

Ultimately, the evidence concerning Mecklenburg's balance and gait problems was conflicting. There was some evidence to support Mecklenburg's claim, but there was also substantial evidence that undermined Mecklenburg's claim. It was the "ALJ's task to resolve genuine conflicts in the medical evidence," *McGill v. Berryhill*, No. 16-CV-4970, 2018 WL 1368047, at *10 (E.D.N.Y. Mar. 16, 2018), and Mecklenburg's arguments have not persuaded the Court that the ALJ's decision is factually unsupported or legally erroneous.

## CONCLUSION

Accordingly, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 19) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 15, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court